Richard Leroy TURNER *v.* STATE of Arkansas

CR 03-628                                                    141 S.W.3d 352

Supreme Court of Arkansas
Opinion delivered January 15, 2004

*Erwin L. Davis*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Richard Leroy Turner appeals the judgment of the Washington County Circuit Court convicting him of rape and sentencing him to ten years' imprisonment. For reversal, Turner argues that the trial court erred in denying his motion to present evidence of the victim's prior sexual conduct. Because this appeal involves a challenge under the rape-shield statute, our jurisdiction is pursuant to Ark. Code Ann. § 16-42-101 (Repl. 1999) and Ark. Sup. Ct. R. 1-2(a)(8). We find no error and affirm.

The record reflects that on July 13, 2002, thirteen-year-old M.H. reported to the Fayetteville Police Department that she had been raped by Turner, who had just turned twenty years old on June 23, 2002. The police collected evidence from the victim's home, including a futon and a blue blanket that appeared to have semen stains on them. The Arkansas State Crime Laboratory later confirmed that samples taken from the stains matched Turner's DNA. The police also arranged for the victim to have a physical examination, conducted by Charla Jameson, a forensic nurse examiner for the Children's Safety Center in Springdale. Based on her examination, Jameson concluded that there was evidence of blunt-force-trauma penetration.

On July 19, 2002, Detective Shawn Caley conducted an interview with Turner, during which he admitted that he had engaged in sexual intercourse with M.H. on two occasions. According to Turner, the first time they had sex was on his birthday, June 23, and the second time was about two weeks before the interview, approximately July 5. Both acts of intercourse occurred at Turner's home. He also described an instance that occurred at M.H.'s home, where the two of them were naked from the waist down and he rubbed his penis on her vagina. Near the conclusion of the interview, Turner admitted that he knew it was wrong to have sex with M.H. because of her age.

During the proceedings below, Turner filed a pretrial motion asking the court to allow him to present evidence of the victim's false statement to police. The motion reflected that the victim had initially told police that she was a virgin prior to being raped by Turner, and that she had bled a lot when Turner first had sex with her. She later told police that she had lied about Turner

being her first sexual partner, and she explained that she previously had sex with a boyfriend from Little Rock before she met Turner. Turner asserted that this testimony was relevant to attack the victim's credibility and to dispute the State's physical evidence gained from the victim's rape examination.

On January 22, 2003, a hearing was held on the motion, pursuant to our rape-shield statute. Counsel for Turner explained that the evidence of the victim's inconsistent statements was relevant to her credibility, especially since the defense maintained that no sexual intercourse occurred. Counsel explained further that the evidence of the victim's prior sexual conduct with her boyfriend was relevant to thwart the anticipated testimony of the forensic nurse examiner. Specifically, counsel argued that the evidence of lacerations to the victim's hymen and blunt-force trauma to the victim's vulva would be used by the State to show that Turner was the cause of these injuries. Counsel argued that because the examination took place more than several weeks after the last alleged act of intercourse, it was necessary to admit evidence that the victim's boyfriend had been in town visiting the victim the weekend before the examination. Counsel argued that such evidence would show that the trauma and lacerations were caused by the victim's boyfriend, not Turner. However, when asked by the trial court whether he had any specific evidence showing that the victim had sex with her boyfriend prior to the examination, counsel stated that he had no such evidence, but that he wanted to be able to ask the victim about it.

Following argument from both sides, the trial court denied Turner's motion in its entirety. Turner was subsequently convicted of raping M.H. and sentenced to ten years' imprisonment. This appeal followed.

For his first point, Turner contends that the trial court erred in refusing to allow him to impeach the victim with her inconsistent statements to police about her virginity. He argues that the evidence was crucial to attack the victim's credibility, and that his purpose for introducing the evidence was not to expose the victim's past sexual conduct, but to prove that she lied to police. He thus asserts that the rape-shield law is not applicable. We disagree.

Under our rape-shield law, section 16-42-101, evidence of a victim's prior sexual conduct is not admissible by the defendant "to attack the credibility of the victim, to prove consent

or any other defense, or for any other purpose." Section 16-42-101(b). *See also Overton v. State*, 353 Ark. 697, 120 S.W.3d 76 (2003); *Butler v. State*, 349 Ark. 252, 82 S.W.3d 152 (2002). The exception is where the trial court, at an *in camera* hearing, makes a written determination that such evidence is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature. *Martin v. State*, 354 Ark. 289, 119 S.W.3d 504 (2003); *Graydon v. State*, 329 Ark. 596, 953 S.W.2d 45 (1997). The statute's purpose is to shield victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *Id.* Accordingly, the trial court is vested with a great deal of discretion in determining whether the evidence is relevant, and we will not overturn the trial court's decision unless it constituted clear error or a manifest abuse of discretion. *Id.*

Here, Turner sought to introduce evidence that the victim had initially told police that she was a virgin prior to being raped by Turner, but later told police that she previously had sexual intercourse with another young man. Contrary to Turner's urging, such evidence clearly falls within the parameters of the rape-shield law, as it is evidence of prior sexual conduct offered for the purpose of attacking the victim's credibility. Accordingly, under the rape-shield law, such evidence may only be admitted if the trial court determines that it is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature. The trial court found that the probative value of the victim's inconsistent statements was slight, finding that it was understandable for a young girl to be reluctant to talk to a police officer or any other stranger about her sex life. The trial court ruled further that the prejudicial effect of the evidence clearly outweighed any probative value.

Under the circumstances, we cannot say that the trial court abused its discretion. We agree that the probative value of the evidence is scant, given that Turner confessed to having sexual intercourse with M.H. on two occasions, while she was thirteen years old. We further agree that the probative value of the inconsistent statements do not outweigh the obvious prejudicial or inflammatory effect of the evidence, which would have been to

cast the young girl in a bad light. *See Butler*, 349 Ark. 252, 82 S.W.3d 152; *Sera v. State*, 341 Ark. 415, 17 S.W.3d 61, *cert. denied*, 531 U.S. 998 (2000).

■ Moreover, we are hard pressed to see how Turner was prejudiced by the trial court's ruling, as he was able to achieve his purpose of impeaching the victim's veracity without touching upon her prior sexual conduct. The record demonstrates that Turner's attorney vigorously cross-examined the victim about the truthfulness of some of the nonsexual statements she made to the police. At one point during the examination, the victim admitted that some of the things she told the police were true, but that some were not. The victim also admitted that she had only told the police that Turner had sex with her on two occasions, even though she testified at trial that there had been three occasions. Accordingly, Turner has failed to demonstrate that he was prejudiced by not being able to present the inconsistent statements concerning the victim's virginity. *See Martin*, 354 Ark. 289, 119 S.W.3d 504. We thus affirm the trial court's ruling.

For his second point on appeal, Turner argues that the trial court erred in refusing to allow him to introduce evidence that on the weekend prior to the victim's rape examination, the victim's out-of-town boyfriend had been visiting her. He speculated that during that visit, the victim and her boyfriend engaged in sexual intercourse. He thus contends that such evidence was relevant to show that the lacerations and trauma to the victim's genitalia found during the rape examination were not caused by Turner.

■■ We cannot reach the merits of this point because Turner failed to proffer what the evidence would have been. Indeed, Turner's counsel admitted during the hearing below that he had no specific evidence to proffer; rather, he indicated only that he wanted to question the victim about the allegation. In any event, the record does not reflect that defense counsel ever attempted to proffer the victim's testimony on this issue. The failure to proffer specific evidence renders a relevancy determination impossible. *Donihoo v. State*, 325 Ark. 483, 931 S.W.2d 69 (1996); *Byrum v. State*, 318 Ark. 87, 884 S.W.2d 248 (1994). Thus, where the defense seeks to introduce evidence of a rape victim's prior sexual conduct, but makes no proffer of the evidence, we will decline to consider the issue of its admissibility on appeal. *Id.*;

*Gaines v. State*, 313 Ark. 561, 855 S.W.2d 956 (1993). Given the complete lack of proof on this issue, we affirm the trial court's ruling.

GLAZE, J., not participating.