Charles Gentry RODGERS *v.* STATE of Arkansas

CA 04-534                                                  199 S.W.3d 625

Supreme Court of Arkansas
Opinion delivered December 9, 2004

*Don R. Etherly,* for appellant.

*Mike Beebe*, Att'y Gen., by: *David J. Davies*, Ass't Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. Appellant Charles Rodgers appeals from his conviction for rape and his sentence to life imprisonment. He asserts three points on appeal. We find no error and affirm the judgment of conviction.

The facts are garnered from the testimony at trial. On June 8, 2002, at 3:30 a.m., Lillian Adams was awakened by a knock on the door of her home. When she opened the door, she found Rodgers, her live-in boyfriend for two years. Following some discussion between the two regarding Rodgers's hunger, Ms. Adams convinced Rodgers to stay at her home and get some sleep. They both fell asleep on the couch downstairs. Afterwards, they awoke and went upstairs to Ms. Adams's bedroom. At that time, Rodgers again pressed Ms. Adams to go out and get something for him to eat. She declined and returned downstairs to sleep on the couch, leaving Rodgers in her bedroom to sleep.

At some point later that night, Ms. Adams awoke again, sensing that something was wrong with her then-twelve-year-old daughter, S.A. She went upstairs, entered S.A.'s room, and saw S.A. lying sideways on her bed and Rodgers lying behind her, but facing her. When Ms. Adams called Rodgers's name, he slid off the bed. He was wearing only his underwear, and he wrapped a blanket around him. After asking S.A. whether he had done anything to her, Ms. Adams removed the covers from her daughter and saw that her shorts and underwear were pulled down. Rodgers continuously denied that he had done anything to the child and stated that he loved both of them and that he had only come to S.A.'s room to check on a pet rabbit he had given to S.A.

S.A. initially told her mother that she did not know if anything had happened while she was asleep. However, a few minutes later, she told her mother that Rodgers had touched her and that her "private part" was hurting "[a] little bit." Ms. Adams sent S.A. to the bathroom to check herself, and S.A. came back and told her that she was not bleeding but that a "white glup" came out. At that point, Ms. Adams took S.A. to the hospital where a rape kit was performed. Rodgers was arrested later that morning by police. He was subsequently tried, convicted of rape, and sentenced to life imprisonment.

For his first point on appeal, Rodgers argues that during his cross-examination of S.A., he was prevented from inquiring about

prior statements she made to medical personnel and police officers about what Rodgers had apparently done to her. He maintains that the circuit court erred in ruling that his cross-examination was beyond the scope of the redirect examination and that it should be limited based upon S.A.'s age. He asserts that as a result, he was prevented from fully cross-examining his accuser.

A review of the record reveals that during redirect examination, the prosecutor asked S.A. if she knew what was "going in and out of [her]" to which she responded, "[h]is penis." Defense counsel, on recross examination, asked S.A. whether she remembered telling the nurse and people at the hospital that it was either a finger or a penis. S.A. responded that she did not remember that. At that time, the prosecutor objected to defense counsel's question on the basis that he was mischaracterizing the evidence.

At the ensuing bench conference on the objection, the circuit court ruled that defense counsel's question was outside the scope of the prosecutor's redirect examination and that the prosecutor's question only related to previous testimony that Rodgers "put his stuff back in his underwear." The circuit court told defense counsel that that was the only area it was going to let both sides question S.A. about, and it emphasized the fact that S.A. was only thirteen years old.[1] The circuit court added that it was not going to allow defense counsel's recross examination to confuse either S.A. or the jury. Defense counsel then replied that he was merely "expounding on the question that at the time she didn't know and when she got to the hospital it became penis or hand." The circuit court repeated that it had made its ruling.

This court reviews matters concerning the scope of cross-examination under an abuse-of-discretion standard. *See Woodruff v. State*, 313 Ark. 585, 856 S.W.2d 299 (1993). This court has stated that the use of cross-examination is an important tool in bringing the facts before the jury and that wide latitude should be afforded by the trial court. *See id.* That being said, this court has also held that a circuit court must determine when the matter has been sufficiently developed and when the outer limits of cross-examination have been reached, and unless the trial court's discretion has been abused, this court will not reverse. *See id.* In addition, when determining whether cross-examination restrictions have infringed upon an appellant's confrontation rights, this court looks

---

[1] S.A. was thirteen at the time of the trial.

to the record as a whole to ascertain if the restrictions imposed created a substantial danger of prejudice to the appellant. *See Engram v. State*, 341 Ark. 196, 15 S.W.3d 678 (2000). This prejudice is not presumed, but must be demonstrated. *See id.*

In the case at hand, S.A. testified, on recross-examination, that she did not remember telling hospital personnel that it was either a finger or a penis which Rodgers used. Despite that fact, testimony from a previous witness, Mary King, a nurse at Helena Regional Hospital, demonstrates that S.A. told her that Rodgers had been "messing with [her]." When questioned as to what that meant, S.A. told Ms. King that Rodgers had started touching her bottom and that he had gotten on top of her and inserted his penis into her. On cross-examination of Ms. King, defense counsel questioned her as to a statement that was contained in the notes from S.A.'s treatment at the hospital:

> DEFENSE COUNSEL: Now, one of your statements was that "patient alleges that assailant inserted a penis or hand into her vagina." Is that correct?
>
> Ms. KING: No, sir. That's not my statement.
>
> DEFENSE COUNSEL: That's not your statement?
>
> Ms. KING: No, sir.
>
> DEFENSE COUNSEL: Whose statement was that?
>
> Ms. KING: That was written by Dr. Yende.

This discussion demonstrates that the information sought to be admitted by defense counsel, which was that S.A. told hospital personnel that she was assaulted by a penetrating hand or penis, was already admitted at the time defense counsel sought to recross S.A. Defense counsel apparently recognized this based on his arguments to the circuit court:

> DEFENSE COUNSEL: . . . Now, the medical records have already been testified to by Ms. King that the patient alleges that the assailant inserted a penis or hand into her vagina. She is the patient. Now, she said he inserted a penis and I am merely expounding on the question he asked in cross-examination that at the time she didn't

know and when she got to the hospital it became penis or hand. And for her to sit here today and say penis — definitively say "penis," is contrary to what she said — the statements she's made. And I can — (inaudible).

Despite Rodgers's contentions to the contrary, adequate evidence was presented that S.A. had at one time told Ms. King that her assailant had inserted a penis into her and that at another time she told hospital personnel that it was either a hand or a penis. Moreover, we are cognizant of the fact that the insertion of either a penis or finger into the vagina of a twelve year old constitutes rape. *See* Ark. Code Ann. § 5-14-103(a)(1)(C)(i) (Supp. 2003); Ark. Code Ann. § 5-14-101(1), (10) (Supp. 2003). Accordingly, we need not reach the issue of whether the circuit court cut off cross-examination prematurely, because we hold that Rodgers was not prejudiced by the circuit court's ruling and, hence, the circuit court did not abuse its discretion in limiting Rodgers's recross-examination of the thirteen-year-old witness.

Rodgers next claims that the circuit court erred by preventing him from questioning Detective Billy Williams when called as a defense witness. Detective Williams was called for purposes of impeaching S.A.'s allegedly inconsistent trial testimony. Rodgers asserts that he should have been able to ask Detective Williams about S.A.'s statements to him, which differed from her trial testimony. The circuit court disallowed this line of questioning of Detective Williams on the basis that it was hearsay.

A review of the record reveals that defense counsel sought to impeach S.A. by demonstrating that in her statement to Detective Williams she failed to mention that she told Rodgers to "get off of her." At trial, S.A. testified as follows:

> DEFENSE COUNSEL: Do you remember telling Billy Williams that you told Charles Rodgers to get off of you?
>
> S.A.: Yes, sir.
>
> DEFENSE COUNSEL: Do you remember telling Billy Williams that?
>
> S.A.: Yes, sir.
>
> DEFENSE COUNSEL: When you went down there to the police department, do you remember them recording the interview — regarding the statement on the tape recorder?

S.A.: Yes, sir.

DEFENSE COUNSEL: So if you said that, it should be on that tape?

S.A.: I'm not sure.

DEFENSE COUNSEL: When you talked to him, did he have the tape playing?

S.A.: Yes, sir.

DEFENSE COUNSEL: Thank you. Pass the witness.

Later on, Detective Billy Williams was called to testify by Rodgers. Defense counsel sought to ask him about certain statements S.A. told him Rodgers made to her. The prosecutor objected on grounds of hearsay, and the circuit court sustained the objection in part because the solicited testimony did not comply with Arkansas Rule of Evidence 613(b), in that S.A. had not first been given an opportunity to admit or deny the alleged statement.

However, we must confess to some confusion about which statement Rodgers is challenging as inconsistent. The circuit court sustained the hearsay objection with respect to a statement *made by Rodgers* to S.A. and then defense counsel made a proffer of proof to the effect that Detective Williams would have testified that S.A. told him that Rodgers made no statements to her. This was an apparent reference to S.A.'s allegedly inconsistent testimony at trial that Rodgers "told me to be quiet." However, Rodgers made no proffer relating to her "get off me" statement. Nevertheless, it is only the "get off me" statement by S.A. that Rodgers challenges in his brief.

When challenging the exclusion of evidence, a party must make a proffer of the excluded evidence at trial so that this court can review the decision, unless the substance of the evidence is apparent from the context. *See Arnett v. State*, 353 Ark. 165, 122 S.W.3d 484 (2003). Here, no proffer was made by Rodgers with respect to whether S.A. told Williams that she had told Rodgers to "get off of her." Instead, his proffer was premised upon whether S.A. told Williams that Rodgers told her to be quiet. A party cannot change his grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at

trial. *See Otis v. State*, 355 Ark. 590, 142 S.W.3d 615 (2004). Because Rodgers failed to proffer this argument below, we decline to address the argument on appeal. *See id.*

For his last issue, Rodgers contends that the circuit court erred in giving the dynamite instruction, AMI Crim. 2d 8102, and in denying his motion for declaration of a mistrial which was premised on that misreading and how the court gave that instruction. Rodgers asserts that while the circuit court read AMI Crim. 2d 8102 to the jury, it added its own language which overemphasized the need for a verdict. He claims that this was prejudicial to him, because it had the ultimate effect of forcing the one juror holding out on a guilty verdict to change his or her vote. The State responds that Rodgers's claim is barred under our contemporaneous-objection rule in that Rodgers failed to object to the circuit court's giving of the instruction until after the jury had already returned to its deliberations and the court had recessed.

Here, a review of the record reveals that after the jury began deliberations at 3:24 p.m., on December 3, 2003, it informed the circuit court at 7:30 p.m. that it was deadlocked at eleven jurors to one in its decision. The next morning, the circuit court gave the jury the "dynamite" instruction, AMI Crim. 2d 8102, in the presence of both parties. Following that instruction, defense counsel inquired as to whether the jury would be given a copy of the instruction.

The court answered in the negative and then recessed the court. Later, after being notified that the jury had reached a verdict, but before the jury was brought back into the courtroom, defense counsel moved for a declaration of a mistrial on the basis that the circuit court had erroneously supplemented the dynamite instruction which was given to the jury. This, according to Rodgers, was unduly prejudicial.

■■ This court has been resolute in holding that a motion for mistrial must be made at first opportunity. *See, e.g., Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000). The reason for this is that a trial court should be given an opportunity to correct any perceived error before prejudice occurs. *See id.* Here, instead of objecting after the circuit court instructed the jury on the dynamite charge, defense counsel waited to move for a mistrial until after the jury had completed its deliberations following the

instruction. Because the motion was not made at the first oppor-
tunity, we hold that Rodgers's argument is procedurally barred.
*See id.*

The record in this case has been reviewed for reversible error
in accordance with Supreme Court Rule 4-3(h), and none has
been found.

Affirmed.

THORNTON, J., not participating.