Harvey BOND, Jr. *v.* STATE of Arkansas

CR 08-224                                    288 S.W.3d 206

Supreme Court of Arkansas
Opinion delivered October 2, 2008

*Phillip A. McGough, P.A.*, by: *Phillip A. McGough*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Eileen W. Harrison*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice. Appellant Harvey Bond, Jr., was convicted by a Miller County jury of one count of rape, one count of rape as an accomplice, and one count of permitting the abuse of a minor for the molestation of his daughter, C.B. Bond was sentenced to the following consecutive terms of imprisonment: twenty years for rape, ten years for being an accomplice to rape, and ten years for permitting the abuse of a minor. Bond raises two points for reversal. He first attacks the circuit court's exclusion of evidence under the rape-shield statute, Arkansas Code Annotated section 16-42-101 (Repl. 1999), asserting that he was denied the right to cross-examine his accuser about her prior conduct. Next, Bond asserts that, under the facts of this case, the model jury instruction regarding eligibility to transfer to community punishment supervision was

misleading, and the circuit court erred in rejecting his proffered instruction. We affirm the circuit court.

On Saturday, April 8, 2006, officers with the Texarkana Police Department were dispatched to 514 Grand Street in reference to a sexual assault. Once there, police interviewed fifteen-year-old C.B., who reported that she had been engaging in sexual intercourse with her father, Harvey Bond, Jr., since she was twelve years old. Officers contacted the Arkansas Department of Human Services to report the allegation, and C.B. was removed from the home until an investigation into the allegation could be conducted.

C.B. reported that in June 2005, she moved to Texarkana to live with her father and his fiancée, Shawna Pate. C.B. reported that she had performed oral sex on her father several times. C.B. also stated that she had sexual intercourse with her father on numerous occasions. Finally, C.B. stated that on one occasion, she smoked marijuana with her father, and he told her she needed to do something for him in exchange. C.B. said that her father then pulled out a very long dildo he referred to as "Big Blue," and at her father's suggestion, C.B. inserted one end of the dildo into her vagina and the other end into Pate's vagina. C.B. and Pate then performed sexual acts requested by Bond.

After speaking with C.B. and other witnesses, the State filed a felony information against Bond, charging him with one count of rape, one count of sexual assault in the second degree, one count of rape as an accomplice, and one count of permitting the abuse of a minor.

Prior to trial, Bond sought to introduce evidence from the Illinois Department of Children and Family Services involving an allegation made by C.B. in August 2004, that her stepfather had molested her. Accordingly, Bond filed a motion under the rape-shield statute, requesting that he be allowed to question C.B. about what had happened in Illinois. In his motion, Bond argued that C.B. had made a prior false allegation that she later recanted after being placed in foster care. He further contended that the rape-shield statute was unconstitutional as applied to him. The circuit court denied Bond's request to allow him to question C.B. about the prior events.

The trial proceeded and ultimately the jury found Bond guilty of one count of rape, one count of rape as an accomplice, and one count of permitting the abuse of a minor. Prior to

sentencing, Bond objected to a model jury instruction involving the eligibility for transfer to community supervision and the seventy-percent requirement on the rape convictions. He contended that the given instruction was misleading and confusing under the facts of this case, and he proffered an amended instruction to address his concerns. The circuit court denied Bond's request to give the instruction. Bond was subsequently sentenced to consecutive terms of twenty years for rape, ten years for accomplice to rape, and ten years for permitting the abuse of a minor. He now brings this appeal.

### Testimony Regarding Prior Conduct

Bond first contends that the circuit court erred in excluding evidence of C.B.'s prior conduct under the rape-shield statute, asserting that he was denied the right to cross-examine his accuser. The rape-shield statute provides in relevant part:

> (b) In any criminal prosecution under § 5-14-101 et seq. or § 5-26-202 . . . opinion evidence, reputation evidence, or evidence of specific instances of the victim's prior sexual conduct with the defendant or any other person, evidence of a victim's prior allegations of sexual conduct with the defendant or any other person, which allegations the victim asserts to be true, or evidence offered by the defendant concerning prior allegations of sexual conduct by the victim with the defendant or any other persons if the victim denies making the allegations is not admissible by the defendant, either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose.

Ark. Code Ann. § 16-42-101(b).

█ Thus, under our rape-shield law, evidence of a victim's prior sexual conduct is not admissible by the defendant to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose. Ark. Code Ann. § 16-42-101(b); *Turner v. State*, 355 Ark. 541, 141 S.W.3d 352 (2004). An exception is granted where the circuit court, at an in camera hearing, makes a written determination that such evidence is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature. *Turner*, 355 Ark. at 545, 141 S.W.3d at 355. The statute's purpose is to shield victims of rape or sexual abuse from

the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *Id*. Accordingly, the circuit court is vested with a great deal of discretion in determining whether the evidence is relevant, and we will not overturn the circuit court's decision unless it constituted clear error or a manifest abuse of discretion. *Id*.

At an in camera pretrial hearing, Bond offered the testimony of C.B.'s mother, Ruby Chwarczinski, and documents about C.B. from the Illinois Department of Family Services. Ruby testified that, at first she did not believe C.B.'s report that her husband and C.B.'s stepfather, Paul Chwarczinski, had touched C.B. in a sexual way. However, two years later, Ruby discovered sexually explicit photos of C.B. hidden in the family's attic. Ruby stated that one of the photographs involved "something sexually" that should not be going on between a man and his stepdaughter. Ruby added that Paul had "gone to the penitentiary for that." According to Ruby, the photographs of C.B. were taken by Paul when C.B. was thirteen or fourteen.

Ruby stated that even though she did not believe C.B.'s first report of abuse, she is now aware that Paul had been molesting C.B. prior to the time when photographs were discovered in the attic. Ruby also testified that Paul admitted that he had touched C.B.'s breast while she walked down the hallway in the house.

The records from the Illinois Child Protective Services recommended that C.B. be considered at risk for further sexual harm. Further, the records stated: "[C.B.] was consistent with the abuse [allegations] on three separate interviews with CPS. [C.B.] only recanted the abuse so that she could be sent back home to her mother due to her placement in foster care." The report also noted that "[C.B.] told CPS that she would tell the judge that nothing happened so [she] could be sent home to her mother."

Bond testified that he had discussions with C.B. about what had happened in Illinois. According to Bond, C.B. told him that she accused Paul of sexual misconduct because Ruby told her to make the accusation. Bond stated that C.B. told him the allegations were not true.

Bond claims that the evidence regarding the allegation and recantation in Illinois would have given him a basis to cross-examine C.B. and give the jury the opportunity to gauge C.B.'s credibility. Bond states that he wanted to show, for purposes of his

defense, that C.B. "had a history of making allegations and then recanting them when it suited her purpose."

At the conclusion of the hearing, the circuit court made the following findings:

> I think this will simplify things. I would certainly allow, if not urge you to proffer these documents that we're going through, but based on your representation that they basically deal with the, let me put it this way, from the period of the earlier part of the Illinois occurrences, when the prosecutrix was nearer nine or ten than twelve or fourteen, uh, when the first outcry was made in Illinois, according to those records, and according to the testimony you've elicited. I do not find under the rape shield statute that that is evidence that directly pertains to her alleged conduct or the defendant's alleged conduct in this matter. That it is less probative than prejudicial or confusing under the balancing act, or balancing determination that the statute requires. It is only remotely relevant on her credibility. It is only relevant at all if it is relevant, to her credibility, but the court is persuaded that as in the dynamics of much sexual abuse, the original outcry is minimized, particularly in the dynamic that the mother testified to, that ultimately, and based on the representations of the victim to counsel off record thus far, she maintains that it was all true. There has not been an admission of falsity. There has not been proof that it was false. There is a recantation early in the process between the time she was nine and the time the photographs of 2004 behavior apparently were discovered in 2006, but it is less probative than prejudicial to delay the trial, and to clog the record as to the Illinois events.

The State contends that, despite Bond's assertion to the contrary, Ruby's testimony and the documentary evidence did not paint a portrait of a child who made false allegations to suit her own purposes. The State further contends that the evidence presented during the in camera hearing demonstrated that C.B. was indeed molested by her stepfather and that she had no ulterior motive for reporting the abuse other than self-protection. The State contends that the fact that C.B. recanted the allegation after being placed in foster care and pressured by her mother is not probative of a devious nature.

The State's argument is well taken. Bond's entire argument on this point is based on the premise that C.B. made a prior false allegation of sexual abuse. The circuit court found, and we agree, that the prior allegation was not false. Bond's assertion to the

contrary ignores the fact the photographs discovered by Ruby proved that C.B. had been victimized by her stepfather when she was thirteen.[1]

■ We also find no merit in Bond's contention that evidence of C.B.'s prior recantation is outside the rape-shield statute because it is not evidence of a specific instance of C.B.'s prior sexual conduct, but rather it is "evidence of her willingness to make false accusations against men and then recant them." The recantation involved C.B.'s sexual conduct with her stepfather. In order to bring the recantation to the attention of the jury, C.B.'s prior sexual conduct would necessarily come to light.

The circuit court did not clearly err in determining that the evidence of the prior recantation was only slightly relevant, if at all, to C.B.'s credibility and that such evidence was more prejudicial than probative. We hold that the circuit court did not err in excluding evidence of C.B.'s prior sexual conduct.

*Jury Instructions*

Bond asserts that the circuit court erred by giving an improper and misleading jury instruction regarding eligibility to transfer to community punishment supervision. The circuit court read the following model instructions to the jury:

> Ladies and gentlemen, in your deliberations on the sentence to be imposed for permitting abuse of a minor, you may consider the possibility of the transfer of Harvey Bond, Jr. from the Department of Correction to the Department of Community Punishment.

> After he serves one third of any term of imprisonment to which you may sentence him, he will be eligible for transfer from the Department of Correction to the Department of Community Punishment. If transfer is granted, he will be released from prison and placed under the post prison supervision.

> The term of imprisonment may be reduced further up to one sixth of any type, of any period you impose if he earns the maximum amount of meritorious good time during his imprisonment.

---

[1] The record reflects that Paul Chwarczinski was convicted of child pornography charges in Illinois.

Meritorious good time is time credit awarded for good behavior, or for certain achievements while an inmate is confined in the Department of Correction or community punishment facility, or in jail while awaiting transfer to one of those facilities. An inmate may be awarded up to one day for every day served.

Accrual of meritorious good time does not reduce the length of the sentence, but it does decrease the time the defendant is required to be in prison before he becomes eligible for transfer to community supervision under which the remainder of his sentence will be served.

In your deliberations on the sentence to be imposed, you may consider the possibility that Harvey Bond, Jr. will be paroled or transferred to community punishment supervision.

Eligibility for parole or transfer to community punishment supervision is as follows:

Rape is punishable by life imprisonment, or a term of years. A person who is under a sentence of life imprisonment is not eligible for parole or transfer to community punishment supervision.

If you sentence Harvey Bond, Jr. to imprisonment for a term of years, he will be eligible for parole or transfer to community punishment supervision after he serves seventy percent (70%) of the term of his sentence. This percentage of imprisonment will not be reduced by earning of meritorious good time during his imprisonment.

Bond argues that, as given, the instruction states that eligibility for transfer is possible after serving one third of any term of imprisonment. He states that there is no clear presentation in the instruction given which tells the jury that the two rape sentences must be served, one after the other, with each requiring seventy percent of the term to be served before any eligibility on the permitting-the-abuse-of-a-minor term can begin. Bond proffered the following jury instruction, which the circuit court declined to give to the jury:

In your deliberations on the sentence to be imposed, you may consider the possibility that Harvey Bond, Jr., will be paroled or transferred to community punishment supervision on the charge of

permitting the abuse of a minor. Eligibility for parole or transfer to community punishment supervision is as follows:

I.

Permitting abuse of a minor is punishable by 5 to 20 years and/or $15,000.

II.

If you sentence Harvey Bond, Jr., to imprisonment for a term of years, he will be eligible for parole or transfer to community punishment supervision after he serves seventy percent (70%) of the term of his rape sentence, then 1/6 of his sentence for the charge of permitting the abuse of a minor. This percentage of the imprisonment will not be reduced by the earning of meritorious good time during his imprisonment.

■■ Non-model jury instructions are to be given only when the trial court finds that the model instructions do not accurately state the law or do not contain a necessary instruction on the subject. *Hill v. State*, 318 Ark. 408, 887 S.W.2d 275 (1994). Further, just because a proffered jury instruction may be a correct statement of the law does not mean that a circuit court must give the proffered instruction to the jury. *Walley v. State*, 353 Ark. 586, 112 S.W.3d 349 (2003). Here, as determined by the circuit court, the model instructions given to the jurors contained accurate statements of the law. Therefore, we hold that the circuit court did not err in refusing to give the proffered jury instruction. Further, as the State points out, Bond was sentenced to twenty years for one count of rape and ten years for the other, which is considerably less than the maximum sentence for each count of rape — life imprisonment. A defendant who has received a sentence within the statutory range short of the maximum sentence cannot show prejudice from the sentence itself, *see Buckley v. State*, 349 Ark. 53, 76 S.W.3d 825 (2002), and this court will not reverse absent a showing of prejudice by the defendant. *See Price v. State*, 365 Ark. 25, 223 S.W.3d 817 (2006).

Affirmed.

WILLS, J., not participating.