2009 Ark. 168

**Timothy Justin JOYNER, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–824.**

Supreme Court of Arkansas.

April 2, 2009.

Jeff Rosenzweig, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Deborah Nolan Gore, Ass't Att'y Gen., Little Rock, for appellee.

JIM GUNTER, Justice.

This appeal arises from the conviction of Appellant Timothy Joyner of four counts of rape and one count of terroristic threatening in the first degree. Appellant was sentenced to forty years on each count of rape and six years on the count of terroristic threatening, all to run concurrently. On appeal, Appellant asserts that (1) the circuit court erred in denying his motion to permit testimony concerning prior claims of sexual abuse made by the victim; (2) the circuit court erred in refusing to grant a mistrial or a new trial; and (3) the circuit court erred in refusing to instruct on the lesser offense of sexual assault in the second degree on one of the rape counts. We affirm.

On May 17, 2006, an information was filed charging Appellant with four counts of rape, each of which was a class "Y" felony in violation of Arkansas Code Annotated § 5–14–103. Each count charged him with unlawfully and feloniously engaging in sexual intercourse or deviate sexual activity with S.O., who was less than fourteen years of age.

On April 25 and December 13, 2007, Appellant filed motions to admit evidence of prior sexual conduct of S.O., specifically evidence that she had made prior allegations of sexual assault against other males in a familial relationship. Appellant al-

leged that S.O. was the victim of two prior sexual assaults. He claimed that the evidence of two prior sexual assaults could be the cause of injury to S.O.'s vaginal area. The two alleged incidents involved a man named Lavelle in 2000 and a man named Chuck McGhee [1] in 2001.

On December 17, 2007, the Stone County Circuit Court held an in camera hearing on the rape-shield motion. Appellant called Tammy Mosley, the mother of S.O.'s best friend, D.D., who testified that she had knowledge of previous sexual abuse of S.O. Appellant also presented an affidavit of Tammy stating that she had "first-hand knowledge of the molestation of [S.O.] by Mr. [McGhee] in 2001" and that "[S.O.] was not a virgin when she accused [Appellant] of rape." Appellant also offered the affidavit of D.D., Tammy's daughter. The affidavit was excluded on hearsay grounds, but was proffered into the record. D.D.'s affidavit stated that both she and S.O. were touched in their private areas by Lavelle, that S.O. was molested many times in 2000 and 2001, and that S.O. was not a virgin when she accused Appellant of rape. It was reported to Human Services that S.O.'s mother walked in on Chuck McGhee having sex with S.O. After the testimony of Tammy and D.D., Appellant asked to call S.O. to testify in the in camera hearing.

Relying on *Sterling v. State,* 267 Ark. 208, 590 S.W.2d 254 (1979), the circuit court ruled that there is no requirement for S.O. to present herself for questioning by the accused and denied Appellant's request to call S.O. to the stand. The circuit court ruled that Appellant did not offer proof that the alleged prior act occurred and that the rape-shield statute precluded any inquiry into the prior sexual conduct of S.O.

On the first day of trial, Jennifer Beaty, the DNA analyst from the Arkansas Crime Lab, testified that DNA found on a pair of S.O.'s underwear belonged to S.O. within a reasonable degree of scientific certainty. At the beginning of Appellant's cross-examination of Beaty, he moved for a mistrial on the grounds that she had changed her opinion and that he would not be able to effectively cross-examine her due to the sudden change in her opinion. The circuit court denied the motion for mistrial on the basis that it was not timely made and because all of the materials from Beaty's file had been supplied to Appellant.

On December 20, 2007, Appellant moved for a new trial pursuant to Arkansas Code Annotated section 16–89–130 and Arkansas Rule of Criminal Procedure 33.3(a), arguing again that he never received notice of Beaty's changed opinion. The circuit court reaffirmed its previous ruling that the motion for mistrial was not timely and denied Appellant's motion for new trial.

At the end of trial, Appellant asked the circuit court to instruct the jury on sexual assault in the second degree, as a lesser-included offense of rape, arguing that the State failed to provide any substantial evidence that S.O. was under the age of fourteen, that he was over the age of eighteen, or that he had any sexual contact with her. The circuit court denied the motion. Appellant now brings this appeal.

### Rape-shield statute

■ For his first point on appeal, Appellant asserts that the circuit court erred in denying his motion to permit testimony concerning prior claims of sexual abuse made by S.O. Specifically, Appellant contends that the testimony would demonstrate the knowledge of S.O. to

---

**1.** The record and briefs refer to the alleged 2001 abuser as both "Chuck McGhee" and "Chuck McKee." We will refer to him as "McGhee" to avoid confusion.

make allegations of sexual abuse and that the purported injury to her genital area could have been from prior sexual conduct. He further asserts that the circuit court erred in not allowing him to question S.O. at the in camera hearing on the rape-shield motion.

The rape-shield statute, codified at Arkansas Code Annotated § 16–42–101, states, in pertinent part:

(b) In any criminal prosecution under § 5–14–101 et seq. or § 5–26–202, or for criminal attempt to commit, criminal solicitation to commit, or criminal conspiracy to commit an offense defined in any of those sections, opinion evidence, reputation evidence, or evidence of specific instances of the victim's prior sexual conduct with the defendant or any other person, evidence of a victim's prior allegations of sexual conduct with the defendant or any other person, which allegations the victim asserts to be true, or evidence offered by the defendant concerning prior allegations of sexual conduct by the victim with the defendant or any other person if the victim denies making the allegations is not admissible by the defendant, either through direct examination of any defense witness or through cross-examination of the ⌊₅victim or other prosecution witness, to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose.

Thus, under our rape-shield law, evidence of a victim's prior sexual conduct is not admissible by the defendant to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose. Ark.Code Ann. § 16–42–101(b); *Bond v. State,* 374 Ark. 332, 288 S.W.3d 206 (2008). An exception is granted where the circuit court, at an in *camera* hearing, makes a written determination that such evidence is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature. *Id.* The statute's purpose is to shield victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *Id.* Accordingly, the circuit court is vested with a great deal of discretion in determining whether the evidence is relevant, and we will not overturn the circuit court's decision unless it constituted clear error or a manifest abuse of discretion. *Id.*

Appellant relies on *State v. Townsend,* 366 Ark. 152, 233 S.W.3d 680 (2006), for his assertion that the State's introduction of medical evidence involving the injury to S.O.'s vaginal area makes questioning concerning an alternative source for the injury relevant. In *Townsend,* we concluded that evidence of prior sexual assault of the victim was not relevant to the allegations against the accused "unless the State introduces medical evidence consistent with those allegations." *Id.* at 161, 233 S.W.3d at 687. Here, the State ⌊₆introduced the testimony of Dr. Jerry Jones at trial. Jones practices in child abuse pediatrics at Arkansas Children's Hospital. Jones testified that he examined S.O. in May of 2006. He stated that there was a piece of S.O.'s hymen missing. He also stated that this was not a fresh injury, but was from sometime in the past. He said that the injury was "at least a week old probably at least two weeks." He stated that it was possible for the injury to be years old. Dr. Jones could not say for sure when the injury happened, stating that at some point in S.O.'s life, she was penetrated by some object, and it did damage to the hymen. Here, the State has introduced medical evidence consistent with the allegations against the accused, making evi-

dence of S.O.'s past sexual conduct relevant for Appellant's defense.

In *Townsend*, we recognized that evidence of a child victim's prior sexual conduct could be relevant to rebut the weighty inference that the victim must have received his or her knowledge of sexual matters from the alleged encounters with the defendant. We adopted a five-factor test from *State v. Pulizzano*, 155 Wis.2d 633, 456 N.W.2d 325 (1990), for determining whether evidence of a child victim's prior sexual conduct is admissible for the limited purpose of proving an alternative source for the child's sexual knowledge. For the evidence to be admissible, the defendant must offer proof

> (1) that the prior act clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; (5) that the probative value of the evidence outweighs its prejudicial effect.

*Townsend*, 366 Ark. at 158, 233 S.W.3d at 685.

In the present case, Appellant is attempting to introduce prior sexual conduct to prove that there was an alternate source for the victims's injury, rather than an alternate source for her sexual knowledge. The State asserts that the rationale behind the factors set out in *Townsend* is equally applicable here. We agree and adopt *Townsend* for this situation. Under an analysis of the *Townsend* factors, Appellant's offer of proof fails. The circuit court found that Appellant failed to meet the first factor of the test because Appellant did not prove that the prior act clearly occurred. Appellant presented the testimony of Tammy and D.D. and their affidavits, all of which were determined by the circuit court to be hearsay. The only other proof he presented was a CIP Intake report, admitted for the purposes of the rape-shield hearing, which was never authenticated. The CIP report alleged that Chuck McGhee sexually abused S.O. by vaginal penetration. S.O. would have been approximately five years old at the time of the alleged 2001 assault by Chuck McGhee. S.O. told the prosecution that she did not remember being sexually abused in 2001. There is no substantial evidence to prove that the alleged sexual abuse by Chuck McGhee in 2001 "clearly occurred." Appellant has failed to meet the first factor, therefore it is not necessary to discuss the remaining factors. Because Appellant has failed to meet the test set out in *Townsend*, it was not a manifest abuse of discretion for the circuit court to exclude evidence regarding the alleged 2001 sexual abuse.

Appellant further argues that it was an abuse of discretion for the circuit court to decline his request to call S.O. as a witness at the in camera hearing. He also contends that such a denial violated his state and federal constitutional rights of compulsory process as guaranteed by the Sixth and Fourteenth Amendments and Article 2, § 10 of the Arkansas Constitution, as well as the Fifth and Fourteenth Amendments and Article 2, § 8 right of due process, comprising the right to present a defense. The State responds, asserting that there is no entitlement to question the victim at a rape-shield hearing.

The in camera hearing is not designed to be used as a subterfuge to obtain a discovery deposition from the alleged victim. *Sterling v. State*, 267 Ark. 208, 590 S.W.2d 254 (1979). There is no requirement that the victim present herself for questioning by the accused. *Id.* Appellant argues on appeal that this "blanket statement should not be the law." However, he has provided no convincing authority to change the law set out in *Sterling*, and we affirm the

circuit court's ruling on this point. *See, e.g., Talbert v. State,* 367 Ark. 262, 239 S.W.3d 504 (2006).

■ We also reject Appellant's argument that the rape-shield statute, as applied to this case, violates his constitutional right to present a defense. Appellant was able to present a defense. He cross-examined Dr. Jones, who testified that the injury to S.O.'s vaginal area was "not a fresh injury," but "occurred sometime in the past." Appellant was able to cross-examine S.O. at trial about her allegations against Appellant. Moreover, the parties stipulated to the 2000 sexual abuse, allowing Appellant to offer evidence to the jury of an alternative source of the damage to S.O.'s hymen. Because we cannot say that Appellant's constitutional rights were violated, we affirm the circuit court's ruling on this point.

*II. Motions for mistrial and new trial*

For his second point on appeal, Appellant asserts that the circuit court erred in denying his motions for mistrial and new trial. Specifically, he contends that his motions should have been granted because Jennifer Beaty, who analyzed DNA evidence found on a pair of S.O.'s underwear, recalculated her figures and changed her testimony before trial. In Beaty's report, dated December 14, 2006, Beaty stated that the DNA tests showed that the DNA was "consistent with" S.O.'s DNA. At trial, Beaty testified that the DNA found on the underwear was S.O.'s DNA. On appeal, Appellant is arguing that this amounted to a discovery violation pursuant to Arkansas Rule of Criminal Procedure 17.1(a)(iv) and that the proper sanction was mistrial pursuant to Rule 19.1. The State responds, asserting that Appellant has not preserved the issue with regard to mistrial, but alternatively argues that the denial of the mistrial motion was proper.

■ We must first address whether Appellant's motion for mistrial was preserved for appeal. The State asserts that, while Appellant argued that Beaty's opinion on the stand differed from that contained in her report and that she testified to calculations not included in her report, he did not allege that the situation amounted to a discovery violation under Ark. R.Crim. P. 17.1, nor did he argue that a mistrial was warranted as a sanction for that violation under Ark. R.Crim. P. 19.7.

A criminal defendant is entitled, under Rule 17.1(a)(iv) to "any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations, scientific tests, experiments or comparisons." At the trial, Appellant's counsel stated:

MR. JAMES: I'm moving for a mistrial, I mean I wasn't [given] this information. This is new—I mean I had this information—I got up on opening statement and gave an opening statement based on the report that she gave—had given to me that's been in the file and had for a year. And now she's—she's come in here and I mean obviously she testified to it before lunch but now she's changed—she's—I mean her—her the—opinions I was given as an—from the expert has now changed.

It appears that although Appellant didn't specifically reference Rules 17.1 and 19.7, he clearly moved for mistrial because Beaty testified to something that was not in the reports provided to him as a part of discovery. We reject the State's preservation argument on this point.

The circuit court denied Appellant's motion for mistrial because it was untimely. This court has been resolute in holding that a motion for mistrial must be made at the first opportunity. *See, e.g., Ellis v. State,* 366 Ark. 46, 233 S.W.3d 606 (2006);

*King v. State*, 361 Ark. 402, 206 S.W.3d 883 (2005); *Rodgers v. State*, 360 Ark. 24, 199 S.W.3d 625 (2004); *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000). The reason for this is that a circuit court should be given an opportunity to correct any perceived error before prejudice occurs. *Ellis, supra; Rodgers, supra; Ferguson, supra.*

■ Here, Beaty testified twice that the DNA belonged to S.O. during the State's direct examination. She also testified regarding the statistics she used in reaching her determination that the DNA belonged to S.O. Following the first time Beaty testified that the DNA "was" S.O.'s, Appellant objected but did not move for mistrial. The State asked Beaty several more questions, and Beaty again testified that the DNA belonged to S.O. with no objection from Appellant. After the State completed its direct examination of Beaty, the court asked if there was "anything else to take up" and Appellant's counsel stated, "[n]ot at this time, Your Honor, not from the Defendant." The court then took a lunch recess, and it was not until Appellant began his cross-examination of Beaty that he moved for mistrial. Appellant's motion for mistrial was untimely. We need not reach the issue of whether the denial of the motion was an abuse of discretion on the merits.

■ The decision whether to grant or deny a motion for new trial lies within the sound discretion of the circuit court. *Clark v. State*, 358 Ark. 469, 192 S.W.3d 248 (2004). Because Appellant's motion for new trial was brought on the same grounds as the mistrial motion, we hold that there was no abuse of discretion in denying his motion for new trial.

### III. Jury instructions

■ For his final point on appeal, Appellant asserts that the circuit court erred in refusing to instruct the jury on the lesser offense of sexual assault in the second degree on one of the counts of rape. Specifically, he contends that the testimony at trial that Appellant had difficulty consummating intercourse and S.O.'s testimony that he "press(ed) against my private with his private" warrants a lesser instruction of sexual assault in the second degree. The State responds, asserting that Appellant has not established that sexual assault in the second degree is a lesser-included offense of rape.

Arkansas Code Annotated section 5–14–103(a)(3)(A) provides that a person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age. A person commits sexual assault in the second degree if the person, being eighteen years or older, engages in sexual contact with another person who is less than fourteen years of age and not the person's spouse. Ark.Code Ann. § 5–14–125(a)(3)(A)–(B).

As this court stated in *McCoy v. State*, there are three independent ways in which an offense can qualify as a lesser-included offense under the Arkansas statute. 347 Ark. 913, 919, 921, 69 S.W.3d 430, 433, 435 (2002) (interpreting Ark.Code Ann. § 5–1–110(b), and retreating from earlier cases that had held that three separate requirements must each be met). Under § 5–1–110(b), an offense is a lesser-included offense if it: (1) "[i]s established by proof of the same or less than all of the elements required to establish the commission of the offense charged," (2) "[c]onsists of an attempt to commit the offense charged or to commit an offense otherwise included within the offense charged," or (3) "[d]iffers from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpable

mental state suffices to establish the offense's commission."

Sexual assault requires proof of two elements that the rape statute does not—the defendant's age and marital status with respect to the victim. Sexual assault is not "established by proof of the same or less than all of the elements required" to establish rape. Sexual assault does not consist of an attempt to commit rape or to commit an offense otherwise included within rape. Sexual assault does not differ from rape "*only in the respect* that a less serious injury or risk of injury to that same person ...."(emphasis added). Thus, under *McCoy,* Appellant has failed to establish that sexual assault is a lesser-included offense to rape, and we affirm the circuit court's ruling. Accordingly, based on the reasoning above, we affirm Appellant's conviction.

Affirmed.

HANNAH, C.J., and DANIELSON, J., concur.

IMBER, J., not participating.

JIM HANNAH, Chief Justice, concurring.

I concur in the result reached by this court but write separately regarding Joyner's motion to permit testimony concerning prior sexual abuse. Joyner argues that he was denied his federal and state constitutional rights to present a defense when the circuit court refused to allow him to question S.O. at the in camera hearing regarding earlier sexual abuse that could have been the cause of the tear to S.O.'s hymen.

I conclude that regardless of any error by the circuit court at the in camera hearing, Joyner suffered no prejudice. While evidence of the alleged 2001 vaginal rape of S.O. was not presented to the jury, evidence of the 2000 sexual abuse of S.O.

and possible injury from that abuse was presented to the jury. Dr. Jerry Jones testified at trial that the injury was at least a week or two old at the time of his examination, and that it was "possible that it could be years old." Thus, the jury knew the injury could have predated the conduct alleged against Joyner. Further, at trial the State and the defense stipulated that S.O. was digitally penetrated in a sexual assault in 2000. This stipulation was read to the jury. Additionally, in closing argument Joyner stated that it was stipulated and "uncontroverted that in 2000 this little girl was, I mean, basically raped. She was digitally penetrated by another guy." Thus, the jury was told that Joyner denied the charged conduct, and evidence was presented to show that the tear in S.O.'s hymen may have been caused by the 2000 sexual assault.

I also note our comment in *Sterling v. State,* 267 Ark. 208, 210, 590 S.W.2d 254, 255 (1979): "There is no requirement that the victim present herself for questioning by the accused." This comment is often misunderstood, and it may have been misunderstood by the circuit court in this case. In *Sterling,* the victim testified at the rape-shield in camera hearing and was asked about her motive in reporting the rape, what she told her parents, and how much she had to drink. *Sterling,* 267 Ark. at 209, 590 S.W.2d at 255. The State objected. This court held that what the victim told her father and what her motive might have been were not issues within the bounds of either the statute or the motion. *Id.* This court noted in *Sterling* that Sterling's motion asserted he "had information which he desired to present to the court for consideration." *Sterling,* 267 Ark. at 211, 590 S.W.2d at 255. In other words, Sterling told the court he wanted a decision on the admissibility of evidence

of prior sexual conduct.[1] Instead, at the in camera hearing counsel sought to use the hearing to fish for information about the victim's motives and facts about the charged rape. Because of this attempt to circumvent the statute, which limits the hearing to admissibility of evidence of prior sexual conduct, this court in *Sterling* stated that the in camera hearing is not to be used as a means to carry out discovery unrelated to sexual conduct. *Sterling,* 267 Ark. at 210, 590 S.W.2d at 255. Rather, the purpose of the in camera hearing is to determine whether evidence of prior sexual conduct is relevant and admissible for trial purposes. *Id.*

*Sterling* does not stand for the proposition that a victim may never be subjected to questioning at the in camera hearing. It stands for the proposition that a victim does not have to present him or herself at the in camera hearing to be subjected to a discovery deposition:

> Appellant should have been permitted to present any available evidence relating to the victim's prior sexual conduct and any available evidence relating to the acts upon which the present prosecution is based. However, the in camera hearing is not designed to be used as a subterfuge to obtain a discovery deposition from the alleged victim.

*Sterling,* 267 Ark. at 210, 590 S.W.2d at 255. The rape-shield statute concerns evidence of prior sexual conduct. General discovery is not the purpose of the in camera hearing. The right to confront the victim as the accusing witness is not compromised by the rape-shield statute:

> If the statute absolutely barred evidence of the victim's prior sexual conduct, its constitutionality would be suspect in light of *Davis v. Alaska,* 415 U.S. 308

[94 S.Ct. 1105, 39 L.Ed.2d 347] (1975)[ (1974) ]. This it does not do. Since this evidence is admissible at trial upon the court's determination that it is relevant to the fact in issue, and that its probative value outweighs its inflammatory or prejudicial nature, we cannot say that the appellant's due process rights are not fully protected.

*Marion v. State,* 267 Ark. 345, 347, 590 S.W.2d 288, 290 (1979).

The rape-shield statute prohibits hearing the issue of admissibility of evidence of prior sexual conduct at trial. Ark.Code Ann. § 16–42–101(b) (Repl.1999). This prohibition against admission at trial applies regardless of what purpose the evidence may serve, whether that be attacking the "credibility of the victim, to prove consent, or any other defense, or for any other purpose." *Id.* Rather, the admissibility of evidence of prior sexual conduct of the victim is decided at an in camera hearing. Ark.Code Ann. § 16–42–101(c) (Repl. 1999). Further, at the in camera hearing, the circuit court must, once it decides to admit the evidence as relevant and sufficiently probative, instruct counsel how the admitted testimony is to be presented at trial. Ark.Code Ann. § 16–42–101(c)(2)(C) (Repl.1999). The rape-shield statute was designed to stop the practice of cross-examination of victims at a public trial regarding their complete sexual history because the history is usually irrelevant to proving the charged crime. *Duncan v. State,* 263 Ark. 242, 244, 565 S.W.2d 1, 2 (1978). The intent is to shield victims of rape or sexual abuse from the humiliation of having personal conduct unrelated to, and irrelevant to, the defendant's guilt discussed in front of the jury and the pub-

---

1. Sterling's motion made reference to prior consensual sexual acts; however, it appears that there was no proffer to allow review of that issue. *Sterling v. State,* 267 Ark. 208, 211, 590 S.W.2d 254, 255–56 (1979).

lic. *Bond v. State*, 374 Ark. 332, 335–36, 288 S.W.3d 206, 209 (2008); *Flurry v. State*, 290 Ark. 417, 720 S.W.2d 699 (1986). It is also intended to encourage rape and sexual assault victims to prosecute their attackers. *State v. Sheard*, 315 Ark. 710, 716, 870 S.W.2d 212, 215–16 (1994).

The rape-shield statute controls where the decision on admission is made. To characterize the statute as a rule excluding evidence and subject to exceptions is inaccurate. "This statute clearly allows evidence of the alleged victim's prior sexual conduct, as well as evidence directly pertaining to the acts upon which the present prosecution is based, to be introduced or inquired about in the in camera hearing." *Sterling*, 267 Ark. at 210, 590 S.W.2d at 255. Thus, it does not exclude evidence of prior sexual conduct and then grant an exception.

The rape-shield statute moves the decision on relevance and probative value of evidence of past sexual conduct from the public setting of trial to a closed in camera hearing. In other words, if the evidence of past sexual conduct is found at the in camera hearing to be relevant to and sufficiently probative of the defendant's defense, it is admissible at trial. *See* Ark. Code Ann. § 16–42–101(c)(2)(C) (Repl. 1999). The rape-shield statute process makes discussion on admission non-public and means that irrelevant evidence of abuse or the victim's sexual conduct will not be disclosed in public. Irrelevant evidence is not admissible in any event. *See* Ark. R. Evid. 402.

In the present case at the in camera hearing, Joyner offered hearsay testimony about other instances of sexual abuse suffered by S.O., as well as unauthenticated governmental reports of abuse she suffered. Further, Joyner believed that at trial the State would attribute the hymen tear to him. The State did so. In opening statements, the prosecutor referenced expert witness Dr. Jerry Jones and stated as follows:

> But what he's going to tell you is that there was evidence of penetration, ah, in this little girl's hymen. Trauma.

> Ah, so you're going to hear [S.O.] tell that he did it. You're going to hear the DNA and the probabilities of it being someone else. You're going to see the holes in the wall.

Joyner requested that S.O. testify at the in camera hearing held before trial. The State argued that the rape-shield statute precludes subjecting a victim to testify about prior abuse at an in camera hearing unless the defendant shows that the "prior acts clearly occurred." Based on finding that the hearsay testimony and the reports were inadmissible, the State argued she could not be compelled to testify at the in camera hearing because Joyner had failed to show by admissible evidence that "the prior acts clearly occurred." The circuit court agreed and did not compel S.O. to testify.[2] The State argues on appeal, as it did in the circuit court below, that under *State v. Townsend*, 366 Ark. 152, 233 S.W.3d 680 (2006), the defendant must prove that the prior act clearly occurred before the victim may be compelled to testify at the in camera hearing. Reliance on *Townsend* is misplaced. *Townsend* controls what must be shown before trial to compel the victim to testify at trial. It does not speak to the victim's testifying at

---

**2.** I note that at the in camera hearing, the prosecutor represented to the circuit court that S.O. had been asked about the prior abuse and could not remember one of the instances. Based on this assertion, the prosecutor also argued that S.O. should not be required to testify. It is doubtful that Joyner's right to confront an accusing witness would be satisfied by the State's representation of what the witness would say.

the in camera hearing. The in camera hearing is specifically held so that the victim can testify in a protected setting to avoid public humiliation by disclosure of unrelated and irrelevant evidence of prior sexual conduct, in this case, prior sexual abuse. *See Bond, supra.* Under the facts of this case, the circuit court erred in concluding that S.O. need not testify at the in camera hearing. However, for the reasons noted above, Joyner suffered no prejudice. Therefore, I concur in the decision to affirm the circuit court.

DANIELSON, J., joins.