2010 Ark. 373
**James Kenneth McCOY, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 10–472.**

Supreme Court of Arkansas.

Oct. 7, 2010.

Timothy R. Leonard, Hamburg, for appellant.

Dustin McDaniel, Att'y Gen., by: John T. Adams, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice.

Appellant was convicted of aggravated residential burglary and rape and now appeals his convictions, arguing the circuit court erred in (1) denying his motion to admit other acts regarding prior sexual conduct with the victim; (2) denying his motion for mistrial during voir dire; and (3) allowing improper impeachment evidence during sentencing. We find no error and affirm on all points.

Because appellant is not challenging the sufficiency of the evidence supporting his convictions, only those facts necessary for a basic understanding of the case and those pertinent to the points on appeal will be discussed. In a felony information filed August 31, 2009, appellant was charged with aggravated residential burglary and rape. On January 21, 2010, appellant filed a motion to admit evidence of other acts with the complaining witness under the Arkansas rape-shield statute, codified at Ark.Code Ann. § 16–42–101 (Repl.1999). In response, the State argued that appellant's suggestion of prior sexual contact between himself and the victim was in stark contrast to the statements he initially made to the police, in which he denied any knowledge of the victim, and the State asked that the motion be denied.

On January 26, 2010, immediately prior to trial, a hearing was held to decide the motion. At the hearing, appellant testified that prior to the night of the alleged attack, October 11, 2008, he did not know the victim, Brenda Drake, as "Brenda Drake"; instead, he knew her as "Bren." He testified that she worked at the Tobacco Outlet and that he frequented both the Tobacco Outlet and the carwash next door. He said that she used to stand in front of the store, smoke a cigarette, and tell him how pretty his car was. He said that they spoke on several occasions. Appellant testified that he had previously had sexual relations with Ms. Drake and that the night of October 11, 2008, was the second time he and Ms. Drake had sex.

On cross-examination, he explained that the first time they had sex involved a similar situation to the second time, namely involving drugs. Specifically, he stated that, both times, he bought some hydrocodone pills for Ms. Drake because she asked him to. He also stated that they had consensual sex at her house both times and that she had invited him to her house.

Brenda Drake testified that she knew appellant only as a customer, that she knew him only by his nickname, Cornbread, and that she knew he drove a white Cadillac because she had seen it at the store. She testified that he had never been to her house prior to October 11, 2008, and that no one called her "Bren" for short.

Officer Don Hollingsworth testified that he had several previous dealings with ap-

pellant. He testified that approximately ten months after the incident occurred, a CODIS hit from the State Crime Lab identified appellant as a match for the evidence collected from the victim. The police obtained an arrest warrant based on the CODIS hit, and appellant was arrested and interviewed. In a videotaped statement, appellant denied knowing the victim. Later, after the information was filed, appellant told Officer Hollingsworth that Ms. Drake was just mad because appellant had taken her money. Officer Hollingsworth also testified that Ms. Drake had never identified appellant as her attacker.

After hearing testimony, the court ruled that this was a "classic case" for application of the rape shield statute. The court held that appellant could testify as to his version of what happened on the night of the alleged incident, but the court would not allow testimony on prior acts.

The case then proceeded to trial, and during the voir dire of the jury pool, the prosecutor made the following statement: "Now, in this case, the Defendant has told us that his defense is that this was consensual sex. . . . Does anybody have a reasonable doubt now because I told you the Defense is saying it was consensual sex?" After the prosecutor posed this question to at least twelve individual prospective jurors, and briefly questioned one of those jurors about a conversation the juror had with the defendant prior to the trial that morning, defense counsel asked to approach the bench and moved for a mistrial. Defense counsel stated: "Your Honor, Mr. Cason [the prosecutor] has just told the jury that the Defendant is going to say it's consensual sex; thus, taking his right to not testify away from him. He now has to testify. And I would move for a mistrial." The prosecutor denied that he had

spoken for the defendant and argued that he had just stated the defense he had been told would be offered. The court made the following ruling: "I sure don't think that's going to prejudice the jury. It may mean—it may even help you. You may not have to call him. He's already said it. No. I don't have a problem with that." The court then denied the motion for mistrial.

During the State's case-in-chief, Robert Jackson, an emergency ambulance service employee, testified that he was working on October 10, 2008, and responded to a call to the Exxon Station in Warren.[1] He testified that the victim had obvious injuries to her face and that most of the blood on her face appeared to be dried, although there was some wet blood on the top of her head. He testified that she had blood smeared on her arms and her face, that she had scuff marks on her knees, and that she complained of some pain to her side area. Jackson testified that the cuts on the victim's face were fairly deep.

Tiffany Spencer Holland, an employee of the Bradley County Medical Center, testified that the victim was brought to the emergency room and had multiple lacerations on her face. The victim also had lacerations on her hand and the bottoms of her feet, and she told Holland that she had been the victim of a sexual and physical assault in her home. She told Holland that someone had entered her home, pinned her down on the bed, choked her, and raped her. Holland testified that the victim had visible redness on her neck and some abrasions. The victim told Holland that she was unaware if her attacker had used a weapon to cut her, and she refused pain medication, stating that she was numb. Dr. Kerry Pennington, the victim's

1. While this witness names the date of October 10, 2008, the incident actually took place in the early morning hours of October 11, 2008.

physician, also testified as to the extent of the victim's injuries and noted that she had sustained a direct-type blow to the head that caused a laceration of the scalp.

Officer Jeremy Chapman testified that he responded to a call to the Exxon Station and found the victim standing outside in a bloody t-shirt. The victim told him that she had been raped in her home, that she had run out of the house and to the Exxon Station, and that the man sounded like he was black. He also testified that there was a report of items stolen from the victim that night, specifically a .22 Ruger handgun and a Motorola cell phone.

Jennifer Beaty, a forensic DNA examiner at the Arkansas State Crime Lab, testified that the DNA taken from vaginal swabs of the victim was consistent with appellant and originated "within all scientific certain[ty]" from appellant.

The victim, Brenda Drake, testified that she recognized appellant as a customer at both Carl's Shoe Store, where she previously worked, and the Tobacco Outlet. She testified that she knew his nickname because, several months previous to the night in question, his car had "burned up" at the Exxon Station, and he had come in the store and was talking about it. She said that, at that time, she asked the cashier who he was. She stated that she knew his nickname, but that she never called him by name and that he had never called her by her name. She testified that on the night of October 11, 2008, she awoke to a swishing sound and then she couldn't breathe because someone was choking her. She testified that she lost consciousness several times. She testified that her assailant raped her and that he called her by name, Brenda. After the attack, she told her assailant that she needed to use the bathroom and then ran from the house and to the Exxon Station for help. She testified that she did not know who did it, but that the man was tall, slim, and sounded black, with a deep, gravelly voice.

Officer Don Hollingsworth testified that he developed appellant as a suspect and questioned him after administering his *Miranda* rights. The videotape of this interview was then shown to the jury. The officer explained that the interview took place approximately ten months after the alleged rape and that, during the course of the interview, he never showed appellant a picture of the victim.

During the defendant's case-in-chief, appellant testified that he had stated in his initial interview that he did not know Brenda Drake, but that was because he knew her as "Bren" and they had not shown him a picture of her. Appellant testified that on the day in question, he was washing his car at the carwash beside the Tobacco Outlet and Drake was outside smoking. She spoke to him and asked him to "check with her," meaning to come by her house. He went by her house that night, and she asked if he could get her some pills, specifically Xanax. She gave him $60, so he left and bought $40 worth of Xanax and a $20 rock of crack cocaine for himself. He returned to her house and smoked the crack in the front room while she did her pills in the bedroom. When he went back into the bedroom, she had already started taking off her clothes. He stated that they had consensual sex, and afterward, she asked if he could get her some more pills. She gave him $100 and he left, but he came back and told her that someone had stolen the money, although it was really in his pocket. She grabbed the money out of his front pocket as he was trying to leave and followed him out the door, and she told him that she was going to get the last laugh.

The jury found appellant guilty of aggravated residential burglary and rape. During the sentencing phase, the defense

presented the testimony of Relinka Lawson, appellant's girlfriend who was pregnant with his child. When the prosecutor asked if this was Lawson's first child, the defense objected on relevance grounds. The prosecutor stated that it was a credibility issue, arguing that "[i]t has to do with the fact that she has two previous children and that she, while one of them, one of her children's fathers was facing capital murder, she was with this guy. And she told me personally that she was still with the other guy." The court sustained the objection. The prosecutor then asked "You also had another man, didn't you, Kenny Ray Daniels?" Defense counsel again objected, and the following colloquy took place:

> MR. LEONARD [defense counsel]: That's the one with the capital murder. He's trying to bring in the fact that, the father of her previous child. He was convicted of capital murder.
>
> THE COURT: Now, just a moment. I don't know what he's—
>
> MR. CASON [prosecutor]: Now, let me tell you this. Let me explain. I still don't understand what the legal objection is, because she's not on trial.
>
> MR. LEONARD: It does not matter.
>
> MR. CASON: Can I finish?
>
> THE COURT: Yes.
>
> MR. CASON: 403(b) [sic] and 404(b) has [sic] to do with defendants.
>
> MR. LEONARD: No.
>
> MR. CASON: Yes, they do.
>
> MR. LEONARD: Prior bad acts doesn't have to be—
>
> THE COURT: Just a minute. Where are you going with this evidence.
>
> MR. CASON: We had a capital murder defendant in this courtroom that she came right back there and she would be here day in and day out during the time that she says they were preparing for a child with this guy. Now, she gets up on the stand and cries and tries to—
>
> THE COURT: Okay. I didn't understand that. At the same time?
>
> MR. CASON: Yes. Same time period. And she tells me that she's still with the other guy.
>
> MR. LEONARD: It's still 403, more prejudicial than probative.
>
> THE COURT: No. I'm going to allow that.

Lawson then testified that Kenny Ray was the father of another child of hers and that he was recently sentenced for killing her baby. She acknowledged that the time she says she was planning a child with appellant is the same time that Kenny Ray was on trial, but she denied that she was still with Kenny Ray. She did admit that she was at Kenny Ray's trial and talked to him at the bar every time the court took a recess.

The jury recommended a sentence of fifty years for each charge, to be served consecutively. The court accepted the recommendation and sentenced appellant accordingly. A judgment and commitment order reflecting this sentence was entered on January 27, 2010, and an amended judgment and commitment order was entered on January 28 to reflect that appellant was required to register as a sex offender. A timely notice of appeal was filed on February 16, 2010.

On appeal, appellant first asserts that the circuit court erred in denying his motion to admit other acts regarding prior sexual conduct with the victim. Under our rape-shield law, evidence of a victim's prior sexual conduct is not admissible by the defendant to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose. Ark. Code Ann. § 16–42–101(b); *Turner v. State*, 355 Ark. 541, 141 S.W.3d 352 (2004).

An exception is granted where the circuit court, at an in camera hearing, makes a written determination that such evidence is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature. *Turner, supra.* The statute's purpose is to shield victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *Id.* Accordingly, the circuit court is vested with a great deal of discretion in determining whether the evidence is relevant, and we will not overturn the circuit court's decision unless it constituted clear error or a manifest abuse of discretion. *Id.*

■ This court has held that prior acts of sexual conduct may be evidence of consent in a subsequent sexual act. *Sterling v. State,* 267 Ark. 208, 590 S.W.2d 254 (1980). However, prior acts of sexual conduct are not within themselves evidence of consent in a subsequent sexual act; there must be some additional evidence connecting such prior acts to the alleged consent in the present case before the prior acts become relevant. *Id.* In this case, appellant asserts that there was undisputed evidence that the victim knew appellant by his nickname, that she knew his vehicle, and that they were "on speaking terms." Appellant argues that this evidence, coupled with his testimony, is sufficient to connect the prior sexual encounter. Appellant |₁₀further contends that the probative value of the prior sexual encounter substantially outweighed any prejudicial effect.

In response, the State asserts that the present case is similar to *Graydon v. State,* 329 Ark. 596, 953 S.W.2d 45 (1997). In *Graydon,* the defendant sought to introduce testimonial evidence of prior sexual

conduct between himself and the victim as evidence of the victim's consent. At the pretrial hearing on the issue, the defendant stated that he had been engaged in a sexual relationship with the victim, whom he referred to as "Pee Wee," for about four months prior to the time of the offense. He stated that every time they had sexual intercourse, the victim was a willing participant. The victim, on the other hand, testified that she did not know the defendant at all until the day of the rape. She stated that she had never had sexual intercourse with the defendant and that no one called her "Pee Wee." The circuit court held that the uncorroborated evidence of prior sexual conduct between the defendant and the victim would not be admissible at trial. This court affirmed the circuit court, finding that the only evidence presented that supported the defendant's version of events was his own self-serving testimony. This court held:

> The primary purposes of the rape-shield statute are to protect the victim and encourage rape victims to participate in the prosecution of their attackers. Such worthy purposes would surely be thwarted if every defendant in a rape case was allowed to present uncorroborated "evidence" that he and the victim had previously engaged in sexual intercourse over the victim's denial that she had ever known her assailant before the incident. Particularly in this case, where the victim was badly beaten and injured, the minute probative value of allegations of prior consensual intercourse between the victim and the attacker are clearly outweighed by the inflammatory nature of the alleged evidence.

*Id.* at 602, 953 S.W.2d at 48 (internal citation omitted).

■ |₁₁The State asserts that in this case, as in *Graydon,* appellant has offered

nothing beyond his own testimony suggesting that he and the victim had any relationship other than as customer and store employee. Also similar to *Graydon*, the victim in this case was found bloody and bruised, and the small probative value of the allegation of prior consensual sex between the victim and the defendant is clearly outweighed by the inflammatory nature of the alleged evidence.

We find the reasoning in *Graydon* to be persuasive and applicable to the case at bar. Despite his assertions to the contrary, appellant's "corroborating" evidence does nothing more than establish that he and the victim were acquaintances at best; it certainly does not corroborate the existence of any sort of prior relationship such as the one described by appellant. In *Sera v. State*, 341 Ark. 415, 17 S.W.3d 61 (2000), this court explained that the allegation of a prior sexual encounter with the victim, which is unrelated to the incident being prosecuted and denied by the victim, is "the very type contemplated to be excluded under the statute." *Id.* at 442, 17 S.W.3d at 78. Therefore, we hold that the circuit court did not abuse its discretion in not allowing the testimony.

■ For his second point on appeal, appellant argues that the circuit court erred in denying his motion for mistrial during voir dire. A mistrial is a drastic remedy and should be declared only when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when the fundamental fairness of the trial itself has been manifestly affected. *Jenkins v. State*, 348 Ark. 686, 75 S.W.3d 180 (2002). The circuit court has broad discretion in granting or denying a motion for a mistrial, and this court will not reverse the circuit court's decision absent an abuse of discretion. *Williams v. State*, 371 Ark. 550, 268 S.W.3d 868 (2007).

■ When a prosecutor is alleged to have made an improper comment on a defendant's failure to testify, we review the statements in a two-step process. *Armstrong v. State*, 366 Ark. 105, 233 S.W.3d 627 (2006). First, we determine whether the comment itself is an improper comment on the defendant's failure to testify. *Id.* The basic rule is that a prosecutor may not draw attention to the fact of, or comment on, the defendant's failure to testify, because this then makes the defendant testify against himself in violation of the Fifth Amendment. *Id.* A veiled reference to the defendant's failure to testify is improper as well. *Id.*

On appeal, appellant asserts that the prosecutor's comment to the jury pool during voir dire concerning his defense of consensual sex was an improper comment on the absolute right of the defendant not to be compelled to testify. Appellant cites to *Clark v. State*, 256 Ark. 658, 509 S.W.2d 812 (1974), in which this court found reversible error in the circuit court's denial of a motion for mistrial after an improper comment by the prosecutor during opening statements. In *Clark*, the prosecutor remarked in his opening statement that the homicide victim would not be present to tell his side of the story and that the story of what happened would have to come from the defendant. The defendant argued that, because of that statement, she was compelled to testify when she would not have otherwise done so. This court agreed that the remark "resulted in pre-evidentiary coercion which is just as forbidden as is post evidentiary comment." *Id.* at 661, 509 S.W.2d at 815. In this case, appellant asserts that, similar to *Clark*, he was compelled to testify after the prosecutor's comment, and thus the remark was improper and prejudicial.

In response, the State asserts that, in the case at bar, the prosecutor was merely

questioning potential jurors about whether the assertion of a consent defense would raise a reasonable doubt in their minds as to the guilt of the defendant. The prosecutor did not say that the defendant himself would take the stand, nor did the prosecutor's statement lead the jurors to assume that the defendant would take the stand. Therefore, the State argues, there was no abuse of discretion in denying the motion for mistrial.

■■■ We find that we are unable to reach the merits of appellant's argument on this point because his motion for mistrial was untimely. This court has been resolute in holding that a motion for mistrial must be made at the first opportunity. *Ellis v. State,* 366 Ark. 46, 233 S.W.3d 606 (2006). The reason for this is that a circuit court should be given an opportunity to correct any perceived error before prejudice occurs. *Id.* Here, defense counsel did not make his motion for mistrial until the prosecutor had already repeated his question to numerous individual jurors and briefly engaged in questioning one of those jurors on another matter. Accordingly, because the motion was not made at the first opportunity, we hold that appellant's argument is procedurally barred. *See Rodgers v. State,* 360 Ark. 24, 199 S.W.3d 625 (2004).

■■ For his final point on appeal, appellant contends that the circuit court erred in allowing improper impeachment evidence during sentencing. This court has held that circuit courts are afforded wide discretion in evidentiary rulings. *Davis v. State,* 365 Ark. 634, 232 S.W.3d 476 (2006). We will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion, and, likewise, we will not reverse absent a showing of prejudice. *Id.*

■■ On this point, appellant argues that the circuit court erred when it allowed the State to impeach Relinka Lawson by cross-examining her about her prior relationship with a man convicted of murdering one of her children. Appellant asserts that the evidence should have been excluded under Rules 608(b) and 403 of the Arkansas Rules of Evidence. Appellant cites *Mackey v. State,* 279 Ark. 307, 651 S.W.2d 82 (1983), to explain this court's three-part test for determining admissibility under Rule 608:(1) the question must be asked in good faith; (2) the probative value must outweigh its prejudicial effect; and (3) the prior conduct must relate to the witness's truthfulness. Appellant argues that in this case the second and third prongs of this test were not met.

With regard to the second prong, appellant contends that the only probative value provided by the evidence was the fact that the witness was possibly involved in a relationship of some kind with two separate men at the same time. Appellant argues it offered no probative value with regard to her credibility but had a substantial prejudicial effect. The evidence was clearly meant to prejudice the jury by showing that she was present in the courtroom and on speaking terms with a man who had killed one of her children. With regard to the third prong, appellant maintains that whether the witness maintained a relationship with two or more men at the same time is certainly not probative of truthfulness.

Appellant also argues that the evidence should have been excluded under Rule 403 because any probative value was substantially outweighed by the prejudicial effect. Appellant suggests that there was a danger of unfair prejudice by citing this court's definition of unfair prejudice as an "undue tendency to suggest decision on an improper basis, commonly, though not nec-

essarily, an emotional one." *Berry v. State*, 290 Ark. 223, 233, 718 S.W.2d 447, 453 (1986) (citing the advisory committee's commentary to Fed.R.Evid. 403). He argues that the only value the evidence had was to show that Lawson was not credible, and any conclusion that the jury reached about Lawson's credibility would have been improperly based on emotion. Therefore, the evidence should not have been allowed under Rule 403. And finally, appellant argues that he was prejudiced because the jury imposed two consecutive fifty-year terms of imprisonment.

In response, the State first notes that appellant's objection below was based on Rule 403 and did not mention Rule 608, so appellant should be barred from raising any argument based on Rule 608 for the first time on appeal. The State also argues that the court did not abuse its discretion by allowing the evidence under Rule 403. The prosecution sought to introduce the evidence to show that, at the time Lawson said she was planning to raise a child with appellant, she was also maintaining a relationship with Kenny Ray Daniels. The State asserts that this was probative as to her sincerity in her request for leniency for appellant. And while this may have prejudiced the jury against her, it did not establish unfair prejudice against appellant. Finally, the State also contends that appellant failed to demonstrate prejudice because the sentence he received was within the allowable statutory range and less than the maximum allowed.

We agree that Rule 608 was not the basis for appellant's objection below, and a party cannot change the grounds for an objection or motion on appeal, but is bound by the scope and nature of the arguments made at trial. *Henderson v. State*, 329 Ark. 526, 953 S.W.2d 26 (1997). With regard to the Rule 403 argument, we find that the evidence was probative of the witness's credibility, and it was not unfairly prejudicial such that it was an abuse of discretion to allow it. This court has traditionally taken the view that the cross-examiner should be given wide latitude because cross-examination is the means by which to test the truth of the witness's testimony and the witness's credibility. *Fowler v. State*, 339 Ark. 207, 5 S.W.3d 10 (1999). Therefore, we find no abuse of discretion on this point and affirm.

Affirmed.