Cite as 2026 Ark. 39

# SUPREME COURT OF ARKANSAS

No. CR–25–529

| | | |
|---|---|---|
| STATE OF ARKANSAS | | **Opinion Delivered:** February 19, 2026 |
| | APPELLANT | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT [NO. 16JCR-23-1385] |
| V. | | |
| ROY NICHOLS, JR. | | HONORABLE RANDY PHILHOURS, JUDGE |
| | APPELLEE | <u>REVERSED AND REMANDED</u>. |

**NICHOLAS J. BRONNI, Associate Justice**

This interlocutory appeal concerns the scope of Arkansas's rape-shield statute. The State charged Roy Nichols with raping Roschell Lamb. Nichols claims the sex was consensual, and he seeks to introduce evidence he claims will show the two had a prior sexual encounter. Our rape-shield statute generally prohibits the admission of such evidence, but the circuit court held that evidence was admissible here. The State appeals.

We reverse that decision and remand this matter for further proceedings not inconsistent with this opinion.

## Facts and Procedural Background

This case began in July 2011, when Rochell Lamb reported to police that she had been raped by an unknown assailant. Lamb told police—and later testified at trial—that on the night in question, a stranger grabbed her as she was walking back to her apartment, dragged her into a nearby shed, removed her clothes, and vaginally and orally raped her. The initial police investigation did not yield any suspects, and the matter remained dormant

until 2018, when the State identified Nichols as a suspect based on DNA. Following further investigation—and eventually locating Lamb in 2023—the State charged Nichols with rape.

Nichols disputes Lamb's account that she was raped by a stranger, and he seeks to testify that the two had a prior sexual encounter. He also seeks to ask Lamb about that alleged encounter. Our rape-shield statute generally bars evidence of an alleged victim's "prior sexual conduct," including allegations that the defendant and victim had prior sexual contact. Ark. Code Ann. § 16-42-101(b) (Supp. 2021). But that prohibition is not absolute. Instead, the statute allows the admission of such evidence, where "following [a] hearing, the [circuit] court determines that . . . [evidence] is relevant to a fact in issue, and that its probative value outweighs its inflammatory or prejudicial nature." Ark. Code Ann. § 16-42-101(c)(2)(A).

Nichols invokes that exception, arguing that his alleged prior sexual encounter with Lamb undermines her claim that she was raped by a stranger. At an in camera hearing on Nichols's motion to testify and ask about that alleged previous encounter, Nichols testified that he had known Lamb for three or four years and that the pair had sex at a friend's house weeks before the alleged rape. His mother and sister also testified at the hearing that, in the weeks around the alleged rape, Lamb came to their home looking for Nichols.

The circuit court concluded that Nichols's proffered testimony and questions were admissible. It found that Nichols's claim that the pair had a sexual encounter just "two weeks" before the alleged rape was probative of consent "on the night of the incident" and issued a written order permitting Nichols to both testify about and cross-examine Lamb

concerning "any consensual sexual conduct between them." It also excluded Nichols's mother and sister from testifying.

Pursuant to Ark. R. App. P. –Crim. 3, the State timely filed an interlocutory appeal.

**Discussion**

We review circuit court decisions admitting evidence concerning an alleged victim's prior sexual conduct for abuse of discretion. *State v. Cossio*, 2017 Ark. 297, at 5, 529 S.W.3d 620, 623. Conducting that review, we conclude that the circuit court abused its discretion because Nichols's claim that he had a sexual encounter with Lamb weeks before the alleged rape was uncorroborated, marginally probative at best, and highly prejudicial. Indeed, Nichols's "allegation of [a] prior encounter is" precisely the kind of claim that our statute was designed to exclude. *Sera v. State*, 341 Ark. 415, 442, 17 S.W.3d 61, 78 (2000). The circuit court erred in holding otherwise, and we reverse.

A. We begin with the text of the rape-shield statute. That provision generally prohibits defendants from introducing evidence of prior sexual contact between the defendant and the alleged victim "to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose." Ark. Code Ann. § 16-42-101(b). But that statute also contains an exception, permitting such evidence where, after an in camera hearing, the circuit court determines the evidence is both "relevant to a fact in issue" and "its probative value outweighs its inflammatory or prejudicial nature." Ark. Code Ann. § 16-42-101(c)(2)(C). Collectively, those provisions prevent defendants from discussing a victim's sexual history unless the defendant demonstrates that the prior conduct is acutely probative of the defendant's guilt. *Cossio*, 2017 Ark. 297, at 5, 529 S.W.3d at 623.

3

Consistent with that principle, we have long held that such evidence is strongly disfavored and only rarely admissible. For instance, particularly relevant here, we have previously explained that our rape-shield statute does not permit defendants to simply "present uncorroborated 'evidence' that he and the victim had previously engaged in sexual intercourse over the victim's denial that she had ever known her assailant before the incident." *Graydon v. State*, 329 Ark. 596, 602, 953 S.W.2d 45, 48 (1997). Instead, at a minimum, there must be some "corroborating evidence that linked [the defendant] with the victim prior to the date of the offense." *Id.* (explaining that "self-serving testimony" is insufficient).

Moreover, even where corroboration exists, the proffered evidence of prior sexual contact will be excluded absent evidence directly connecting "the alleged prior acts to the consent alleged in the present incident." *Id*.; *accord McCoy v. State*, 2010 Ark. 373, at 11, 370 S.W.3d 241, 248 (an "allegation of a prior sexual encounter with the victim, which is unrelated to the incident being prosecuted and denied by the victim, is 'the very type contemplated to be excluded under the statute'" (quoting *Sera*, 341 Ark. at 442, 17 S.W.3d at 78)). Thus, for example, we have previously held that evidence of contact may be admissible to give the jury an accurate understanding of an event when it occurs "immediately" before an alleged rape or is "so closely connected with" the offense that it forms "part of the same occurrence." *Cossio*, 2017 Ark. 297, at 7, 529 S.W.3d at 624 (citing *Turner v. State*, 258 Ark. 425, 434, 527 S.W.2d 580, 586 (1975)); *see also Herren v. State*, 2018 Ark. App. 528, at 6, 563 S.W.3d 606, 610 (defendant permitted to testify about sexual contact just minutes before the alleged offense). But evidence of sexual contact weeks or

4

days before an event is unlikely to meet that standard. *See Cossio*, 2017 Ark. 297, at 7, 529 S.W.3d at 624 (evidence of sexual conduct the day before not relevant); *Kimery v. State*, 2023 Ark. App. 473, at 13, 678 S.W.3d 816, 824 (similar).

B. Applying that standard, the circuit court should have denied Nichols's motion to admit evidence of his alleged prior sexual encounter with Lamb.

First, Nichols's testimony was utterly uncorroborated and entirely self-serving. At most, to corroborate his account, Nichols points to his mother's and his sister's testimony that Lamb had come looking for him in the weeks around the rape. Yet even crediting that testimony, which the circuit court excluded, it does not corroborate Nichols's claim that he had a prior sexual encounter with Lamb. It would only suggest "that he and the victim were acquaintances," *McCoy*, 2010 Ark. 373, at 11, 370 S.W.3d at 248, and while that evidence might have been admissible to show that Nichols and the victim knew each other, it is not sufficient to admit evidence under the rape-shield statute. Indeed, to hold otherwise would undermine the very purpose of the rape-shield statute and sanction the admission of wholly unsupported claims designed to humiliate and discourage victims from "participating in the prosecution of their attackers." *Graydon*, 329 Ark. at 602, 953 S.W.2d at 48.

Second, Nichols does not point to any connection between the alleged prior contact and the rape that would warrant its admission. He does not, for example, claim that the prior conduct was "intermingled or contemporaneous with the alleged rape." *Cossio*, 2017 Ark. 297, at 7, 529 S.W.3d at 624. Just the opposite, he claims the prior sexual encounter occurred weeks earlier and under very different circumstances. Nor did the circuit court

do any better, simply asserting—contrary to established precedent, *see supra* at 4–5—that a couple of weeks was close enough in time to render the prior conduct probative of consent.

Recognizing that, Nichols barely even bothers to defend the circuit court's reasoning. Rather, he argues that his claim of a prior sexual encounter was probative because it undermines Lamb's claim that she did not know her attacker and shows why she might lie about being raped. But Nichols does not need to mention the alleged prior sexual encounter to make that point. On the contrary, Nichols can make that point by introducing evidence that he and Lamb had known each other for years, cross-examining Lamb on whether they knew each other, potentially calling other witnesses to testify that the two knew each other, and pointing out their age difference. Thus, on balance, any claim that the two had a prior sexual encounter would add little to the jury's understanding and would instead simply serve to inflame the jury. On that basis too, the circuit court should have excluded it. *See Sera*, 341 Ark. at 442, 17 S.W.3d at 78 (affirming exclusion of evidence of little probative value that would simply "cast [the victim] in a bad light").

C. Alternatively, Nichols claims that barring him from asking Lamb about their alleged prior sexual encounter violates the Confrontation Clause. That argument fares no better.

The Confrontation Clause provision guarantees a criminal defendant the right "to . . . confront[] witnesses against him." U.S. Const., amend IV. It does not entitle defendants to ask whatever questions they want. *See Bowden v. State*, 301 Ark. 303, 309, 783 S.W.2d 842, 844 (1990) ("The Confrontation Clause 'guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever

6

extent, the defense might wish.'" (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)));
*see also United States v. Carson*, 870 F.3d 584, 597 (7th Cir. 2017) ("[O]nce [a] motivation
[to lie] has been established, the defendant has no constitutional right to pile on."). On the
contrary, states are free to impose "reasonable limits" to prevent "harassment, prejudice,
confusion of issues, [protect] [a] witness's safety," and otherwise limit an "interrogation that
is repetitive or only marginally relevant." *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673,
679 (1986)). Rape-shield statutes reflect that principle, "represent[ing] a valid legislative
determination that rape victims deserve heightened protection against surprise, harassment,
and unnecessary invasions of privacy." *Michigan v. Lucas*, 500 U.S. 145, 150 (1991); *accord*
*State v. Awbery*, 367 P.3d 346, 349 (Mont. 2016); *State v. Craig*, 853 N.E.2d 621, 635 (Ohio
2006).

At the same time, the Supreme Court has also warned that even otherwise valid
evidentiary rules, like rape-shield statutes, cannot prevent a defendant from asking questions
that might give the jury "a significantly different impression of [an accuser's] credibility."
*Olden v. Kentucky*, 488 U.S. 227, 232 (1988) (quoting *Van Arsdall*, 475 U.S. at 680)). But
critically, as other courts have explained, whether that is the case depends on whether the
defendant "ha[s] other ways to obtain the effect that the excluded examination would have
allegedly established." *United States v. Brown*, 110 F.3d 605, 611 (8th Cir. 1997).

Applying that standard, Nichols's claim fails. As previously explained, Nichols does
not need to ask Lamb about an alleged prior sexual encounter to attack her credibility or
otherwise undermine her claim that she did not know her attacker. He can do that by
asking her about whether the two knew each other and introducing his own evidence that

they did.  And against that backdrop, it is hard to see what, if anything, other than salaciousness, allowing Nichols to ask about an alleged prior sexual encounter would add. Thus, the jury is unlikely to form a significantly different impression of Lamb's credibility absent Nichols's proposed questions about an alleged prior encounter, and the Confrontation Clause does not entitle Nichols to ask them.

## Conclusion

The circuit erred in holding that the rape-shield statute permits Nichols to testify and ask Lamb questions about an alleged sexual encounter weeks before the alleged rape.  We reject Nichols's arguments to the contrary; reverse the decision of the circuit court; and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.

*Tim Griffin*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellant.

*Jimmy Lee Hood*, for appellee.